420 So.2d 1309 (1982)
WALTER LAFARGUE REAL ESTATE, INC., Plaintiff and Appellee,
v.
Francis J. RAINES, Defendant and Appellant.
No. 82-191.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
*1310 Bolen & Erwin, Charles Munsterman and Gregory S. Erwin, Alexandria, for defendant-appellant.
Ford & Nugent, William Ford, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
This is a suit on a construction contract wherein the issue presented is the quality of the contractor's work.
On October 30, 1981, Walter Lafargue Real Estate, Inc., Plaintiff, entered into a written agreement with Francis J. Raines, Defendant, to construct a four on 12 pitch hip roof on top of the existing flat roof at the Raines residence. The contract provided that all work was "to be completed in a workmanlike manner according to standard practices," and that payment was due in full, the sum of Four Thousand Three Hundred Three and 00/100 ($4,303.00), upon completion of the job. Construction followed. When Plaintiff considered the work completed, request for payment was made. Defendant resisted, insisting that the work had not been completed in a workmanlike manner.
Thereafter Plaintiff brought suit seeking the contract price, interest and attorney's fees. Defendant reconvened, claiming the defects[1] entitled him to a credit of Five Thousand Three Hundred Seventy-nine and 00/100 ($5,379.00) Dollars.
After trial on the merits, the trial court rendered judgment in favor of the Plaintiff and against the Defendant in the amount of *1311 the contract price, less ten (10%) per cent (representing the cost of needed repairs), plus interest at eighteen (18%) per cent from February 18, 1981 until paid, together with twenty-five (25%) per cent attorney's fees on interest and principal. Costs of the trial court proceedings were divided as follows: Ninety (90%) per cent to be paid by Defendant and ten (10%) per cent to be paid by Plaintiff. The reconventional demand of Defendant, Plaintiff-in-reconvention was dismissed. From that judgment Francis J. Raines appeals. Plaintiff-Appellee has answered the appeal seeking an increase in the judgment to the full contract price, plus interest and attorney's fees, with all costs cast against the Defendant.
The sole issue on appeal is whether the trial court erred in finding that Walter Lafargue Real Estate, Inc., substantially performed the construction work contracted for.
It is implied in every building contract that the work of the builder will be performed in a good workmanlike manner, free from any defect either in material or workmanship. LSA-C.C. Article 2769; Neel v. O'Quinn, 313 So.2d 286 (La.App. 3rd Cir., 1975), writ denied 319 So.2d 440 (La. 1975). Nevertheless, when a contractor has substantially performed a building contract, even though certain defects are present, he is entitled to recover the contract price and the owner is relegated to having the price reduced by the amount necessary to perfect or complete the work properly. LSA-C.C. Article 2769; Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Neel v. O'Quinn, supra. Thus the aforementioned article constitutes an exception to the general rule applicable to commutative contracts that no payment is due in the absence of total performance; the building contract may be enforced although the work has been substantially but not entirely performed. Whether or not there has been substantial performance, such as would allow enforcement of the contract, is a question of fact. For reasons to follow, we find that the Plaintiff's breach did not excuse Defendant from performing.
Among the factors to be considered in determining whether substantial performance exists are the utility to the owner of the work performed, the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, and the ease of correction. The purpose of the roof was, obviously, to shelter the dwelling from the weather and to enhance the home's appearance. The evidence indicates the defects are primarily cosmetic, although some pose the potential for leakage.
The first witness at the trial was Walter Lafargue, President and sole shareholder of Plaintiff corporation, who was accepted by the trial court as an expert witness in building construction and roofing. He testified that the roof was completed *1312 substantially in a good workmanship manner in accordance with accepted business practice.
Called as expert witnesses by Defendant were Mr. Roger Piper, a contractor; and Mr. Jerry Neal, an architect. Mr. Piper, who is primarily engaged in remodeling, admitted he had no Louisiana Contractor's License and lacked experience in roofing. Nevertheless he provided Defendant with an estimate for repairing the defects, the cost of which exceeded the contract price and involved removing the roof installed by Plaintiff and replacing it. However there is no evidence in the record that the defects were such that replacement would be required.
Mr. Neal testified that the installation of the shingles on the roof were done quite poorly with the exposed lap of the shingles varying both in row per row and from surface to surface. Other complaints included a loose metal flashing around the edge of the roof, a torn roof shingle which should have been cut, cracked ridge shingles and a roof vent which was not placed in a sealant or mastic bed. Furthermore, Neal noted that the new roof structure lacked adequate anchoring to the existing residence. His examination of the structure revealed only "one sixteen penny nail toe-nailed through each of the new roof trusses connecting it to the 2X4 member placed edge down on the existing flat roof." In his opinion, the new roof structure, if not attached to the house well enough, could be displaced by a strong wind and he found no evidence that would suggest that it was attached properly. However, Mr. Neal was not aware of any specific building standards in this regard and stated that the roof "may well be attached in some manner."
Also testifying at trial was Mr. Vernon Rabalais who was the foreman of Walter Lafargue Real Estate, Inc., in charge of the Raines' roofing job. Mr. Rabalais testified that the new roof and trusses supporting it were properly anchored to the existing structure; nevertheless, additional anchoring, if desired, would require minimal effort. He further testified that the ridge vent was installed according to manufacturer's recommendations. Mr. Rabalais did, however, admit that the flashing was nailed through and that some ridges were crooked and some shingles were cracked. In his opinion, these defects were not discernable from the ground, did not impair the roof's functionability, and could be readily repaired at nominal cost.
Mr. Elmore M. Norman, a building and remodeling contractor, also testified on behalf of Plaintiff, Defendant-in-reconvention. Mrs. Raines had called upon Mr. Norman to inspect the job after completion. Mr. Norman found that the job was completed in a substantial and workmanlike manner and needed only minor repairs, aesthetic in nature, which could easily be done.
Mr. Peter C. Meyers, Jr., was accepted by the trial court as an expert in the building construction industry. Mr. Meyers, who inspected the Raines' roof, also testified that the job was substantially completed in a workmanlike manner, compatible with the quality of the existing structure, with some minor exceptions.
Our review of the record convinces us that the trial judge's factual finding of substantial performance is without manifest error. The foregoing facts indicate that the trial court considered the more credible witnesses to be the ones who categorized the defects as cosmetic. Similarly, we find the trial judge's reduction of the purchase price, by an amount reasonably necessary to correct said defects, to be within his "much discretion." LSA-C.C. Article 1934. The same can be said of the allocation of court costs. LSA-C.C. Article 1920. The photographs introduced into evidence speak for themselves; the slovenly workmanship detracts from the appearance of the house. Hence, Appellee's answer praying for an increase in the award is denied.
Accordingly, the judgment appealed is affirmed at Appellant's cost.
AFFIRMED.
NOTES
[1] Raines' reconventional demand specified the following defects:

1. The installation of the new shingles on both the existing mansard portion of the roof and the new "hip" portion of the roof, was done in a totally unworkmanlike manner.
2. The exposed lap of the shingles varied both in row per row on any surface of the roof's surface, and considerably from surface to surface.
3. There are spaces in shingle rows in which shingles are installed in two layers creating wider edge lines in the surrounding shingles for no discernable reason.
4. The "hip" or corner ridge portions of the mansard section of the roof have numerous cracked cap shingles.
5. The "hip" ridges are not straight, nor are the individual cap shingles well cut or trimmed.
6. The top ridge of the new "hip" roof has cap shingles only on the two extreme ends, and the shingles in this particular portion appear to have been torn, rather than cut, and some shingles have been also through nailed with nails covered with sealant.
7. The ridge vent was not installed in a sealant or mastic bed which is considered good practice.
8. The flashing at the junction of the "hip" roof and mansard roof was found to be through nailed at the bottom, which, petitioner is informed, is a very unsatisfactory condition since it destroys the waterproof integrity of the flashing.
9. The nails of the condition mentioned above can be pulled out by hand, and upon doing so the row of shingles immediately below the flashing, will slide out of place since only the nails through the flashing are holding the shingles in place.
10. The nails in the exposed portion of the flashing extend only into the row of shingles below, and not into any wood decking, thus providing no holding power.
11. There is a total lack of adequate anchoring of the new pre-fabricated roof trusses to the existing residence. In fact, there is only one sixteen penny nail toe-nailed through each end of the new roof trusses connecting it to 2 X 4 members placed edge down on the existing flat roof. The said 2X4 member has no visible attachment to the existing residence, and petitioner-in-reconvention has been informed by an architect that the lack of proper attachment of the new roof to the existing residence makes it very likely that in the event of a strong wind storm the new roof would be blown off of the residence.