671 So.2d 473 (1995)
UTLEY-JAMES OF LOUISIANA, INC.
v.
STATE of Louisiana, DIVISION OF ADMINISTRATION, DEPARTMENT OF FACILITY PLANNING AND CONTROL.
No. 94 CA 2504.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*474 Steven B. Loeb and Murphy J. Foster, III, Baton Rouge, for Plaintiffs-Appellants, Aetna Cas. & Utley-James.
David A. Dalia, New Orleans, for Defendant-Appellee, State, Div. of Admin.
James Hrdlicka, Baton Rouge, for Defendant-Appellee, State Atty. General's Office.
Before SHORTESS, PARRO and KUHN, JJ.
SHORTESS, Judge.
On September 11, 1984, Utley-James of Louisiana, Inc. (Utley), entered into a contract with the State of Louisiana, Division of Administration (defendant), to construct a cell block and support facility at the Louisiana State Penitentiary at Angola, Louisiana. Aetna Casualty & Surety Company (Aetna) was surety for the project. Utley was 53 days late in completing the project. Defendant withheld $63,600.00 (53 days at $1,200.00 per day) in liquidated delay damages from the final payment to Utley and Aetna under the construction contract.
Utley sued defendant to recover the sum withheld. Aetna joined in the suit as an additional plaintiff, alleging Utley assigned its rights to the proceeds of this action to it under an assignment of accounts receivable. (Utley and Aetna will hereinafter be referred to as plaintiffs.)[1]
After trial on the merits, the trial court dismissed plaintiffs' suit. The trial court made the following findings: (1) defendant had suffered no actual damage as a result of the delay because it did not connect the emergency electrical utilities and thus could not house prisoners in the cells; (2) defendant did not have to prove actual damages because the contract provided for liquidated damages; (3) putting in default was unnecessary because the contract contained the phrase "time is of the essence"; and (4) the building was not substantially complete until the date of the architect's certification. Plaintiffs appeal.[2]
Plaintiffs assign two factual and three legal errors of the trial court. They contend the trial court was manifestly erroneous in its findings (1) that the project's completion date was May 15, 1986, and not March 14, 1986; and (2) that plaintiffs were not entitled to credit for time the project was delayed by defendant's architect. In addition, plaintiffs contend the trial court committed legal error *475 by (1) permitting assessment of liquidated damages after finding defendant sustained no actual damages; (2) ruling that defendant could withhold liquidated damages from its payment to plaintiffs under the contract, rather than paying plaintiffs and then filing a suit to recover liquidated damages; and (3) finding defendant did not have to place Utley in default because the contract contained the phrase "time is of the essence."

WHEN WAS THE PROJECT SUBSTANTIALLY COMPLETE?
We shall first address plaintiffs' contentions regarding the trial court's factual findings. Plaintiffs contend no liquidated damages are due because the project was substantially complete within the time provided in the contract. Alternatively, they contend that if the project was not completed timely, they should be given credit for delays caused by the project architect taking a 26-day skiing vacation in Europe from February 9 to March 6, 1986. Whether substantial completion has occurred is a factual determination to be made by the trial court; it is subject to the manifest error standard of review. O & M Constr. v. State, 576 So.2d 1030, 1035 (La.App. 1st Cir.), writ denied, 581 So.2d 691 (La.1991).
The contract provided the job was to be completed in 365 days. Liquidated damages were due under the contract only if the job was not substantially complete within the contract period. Article 8.1.3 of the contract provided that "[t]he Date of Substantial Completion of the Work ... is the Date certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner can occupy or utilize the Work or designated portion thereof for the use for which it is intended." Utley was granted extensions, primarily due to bad weather, totaling 178 days. The extended contractual completion date was March 22, 1986.
Carlos Guerrero was sent to Louisiana by Aetna in December 1985 to supervise the completion of Utley's projects in this state. Guerrero testified that in January 1986, Utley requested a substantial completion inspection be conducted by Lloyd M. Back, the project architect, on February 9. Back, however, allegedly left on vacation on February 9 without making an inspection.[3] Ronnie Emonet, chief engineer for the Louisiana Division of Administration, Facility Planning and Control (FPC), testified it was his understanding Back's vacation made no difference because the project was not ready for a substantial completion inspection.
Emonet's testimony is supported by the reports from the site visits. The January 23 report of Joel B. Grayson, the field engineer on the project for FPC, states: "The project is 6 to 8 weeks from completion." On March 13 Grayson reported: "Punch List Too Great to consider any completion inspection." In light of the ample evidence in the record that the project was not ready for a substantial completion inspection on February 9, we find the trial court was not clearly wrong in ignoring Back's vacation when calculating the completion date of the project.
We also find the trial court was not clearly wrong in finding the date of substantial completion was May 15, 1986. Plaintiffs contend Back's inspection of March 6 was a substantial completion inspection and announced at the project meeting on that date that the date of substantial completion was March 14. Guerrero testified that the punch list generated by the March 6 inspection contained only minor items, and that there was no doubt whatsoever in his mind plaintiffs had "received" substantial completion. Plaintiffs' expert architect, T. Clayton Smith, testified that, based on his review of the punch list of March 6, there was nothing to prevent occupancy of the building on March 14 other than lack of emergency power.
The site visit reports do not substantiate that claim. Back wrote to plaintiffs on March 3, stating a substantial completion inspection would be held on March 5 and 6. He enclosed a five-page "partial project punchlist" dated February 27. The inspection of March 5 and 6 revealed multitudinous problems which precluded substantial completion. *476 Utley was provided a 48-page punch list dated March 7 which included cosmetic problems, as well as an inoperable fire alarm system (a violation of the Life Safety Code), an inoperable sewerage lift station, and problems with coordination of the subcontractors' work in the chases.[4] Jack H. Rau, the structural engineer on the project, testified that even cosmetic problems can be major obstacles to substantial completion in a prison because of the difficulty in completing the job if the prison is occupied. In this case, the lengthy punch list, the life safety code issues, and the coordination problems were enough to prevent substantial completion. In addition, there were ongoing problems with the controls to the cell doors which were not corrected until May. We find plaintiffs' assignment of error regarding the date of completion to be without merit.

DID DEFENDANT SUSTAIN ACTUAL DAMAGES?
Under Louisiana law, a stipulated-damages clause is designed to fix the measure of damages in advance and to constrain the timely performance of the principal obligation. No showing of pecuniary or other actual damage is required to enforce the clause. Southern Constr. Co. v. Housing Auth., 250 La. 569, 580, 197 So.2d 628, 632 (1967). After the contract in question was entered into, this rule of law was codified as Louisiana Civil Code article 2009.[5]
Comment (d) to article 2009 states the article does not prevent a defendant from proving that a plaintiff who seeks to avail himself of a stipulated damage provision actually sustained no loss. Relying on this comment and the trial court's finding defendant sustained no actual damage, plaintiffs contend the trial court committed legal error in finding them liable for liquidated damages.
Defendant contends, however, the trial court was manifestly erroneous in finding it sustained no actual damages, and alternatively, if there were no actual damages, liquidated damages may still be assessed under the contract.
Emergency electrical power was originally to be installed by Utley under this contract, but defendant deleted that item from the contract because of budgetary constraints, electing to install the emergency power later. Because of the lack of emergency power, defendant could not get the necessary occupancy permit from the state fire marshal, and the building could not be occupied. The trial court found defendant did not sustain damages due to plaintiffs' delay in completing the project because the lack of emergency electrical power prevented occupancy.
Among the damages claimed by defendant was the cost of maintaining prisoners in parish jails instead of housing them in the state prison at Angola. Inability to occupy the building for reasons other than plaintiffs' delay may have negated any damages defendant might have sustained for the cost of housing prisoners elsewhere. The problem with the emergency power, however, had nothing to do with some of the other damages suffered by defendant. Rau initially testified he did not know of any actual damages defendant sustained as a result of the delay. He then stated he had applied for additional design fees (i.e., fees charged by the architectural firm to oversee the job) because of the additional time required to complete the job. Julius L. Birch, Chief Engineer with FPC at the time of this project, testified he recommended Rau's firm be paid additional fees and the contract was amended accordingly. Birch and Emonet both testified defendant was required to pay additional builder's risk insurance because of the delay in completion. The testimony regarding defendant's obligation to pay these additional costs was undisputed. These costs were not related to the lack of emergency electrical power, and thus the trial court was clearly wrong in finding defendant sustained no actual damages.
Because we find there were actual damages, we need not address defendant's argument that liquidated damages may be assessed even if no actual damages have been *477 sustained. Defendant was damaged, and it was entitled to the stipulated damages for delay as agreed to by the parties without having to prove the exact amount of the damage.

WAS PUTTING IN DEFAULT NECESSARY?
Plaintiffs contend the trial court committed legal error in finding it was unnecessary for defendant to place it in default because the contract stipulated that time was of the essence. The contract contains the following language in section 8.2.1 of the supplementary conditions:
Time is of the essence and completion of the work must be within the time stated in the contract.... The Owner will suffer financial loss if the Project is not substantially complete in the time set forth in the Contract Documents.
The obligations articles of the Civil Code were completely rewritten by Acts 1984, No. 331, § 1, effective January 1, 1985. The Civil Code currently provides that putting in default is not necessary when the term for performance of an obligation is fixed. La.C.C. art. 1990. When the parties entered into this contract, however, the Civil Code generally provided that damages for a passive breach of contract began to run only after the debtor had been put in default. La.C.C. art. 1933 (1870). An exception to this general rule was forth in old article 1911, which provided a debtor could be put in default by a stipulation in the contract that time is of the essence.[6]See O & M Constr. v. State, 576 So.2d 1030, 1037 (La.App. 1st Cir.1991), and voluminous cases cited therein.[7]
The O & M case involved interpretation of a contract virtually identical to the one herein. The court in that case interpreted that supplementary condition 8.2.1 as a clear agreement that time was of the essence, which eliminated the necessity of putting the contractor in default.[8] Likewise, in this case we find the "time is of the essence" language of the contract was a stipulation which made putting in default unnecessary. The trial court correctly held this language relieved defendant from the obligation to put plaintiffs in default.

COULD DEFENDANT LEGALLY WITHOLD LIQUIDATED DAMAGES FROM PLAINTIFFS' PAYMENTS UNDER THE CONTRACT?
The contract contains the following language regarding liquidated damages:

Liquidated Damages: Contractor shall be assessed Liquidated Damages in the amount of $1,200.00 per day for each consecutive calendar day which work is not complete....
The instructions to bidders are incorporated into the contract. Article 9 of those instructions provides:
9.1 The completion of the Contract must be within the time stated on the Proposal Form ... or the Contractor will be subject to pay to the Owner Liquidated Damages....
Article 8.2.1 of the supplementary conditions to the contract states:
The Contractor and his Surety shall be liable for and shall pay to the Owner the sum stated in the Contract Documents as fixed, agreed and liquidated damages....
Plaintiffs contend the contract allows defendant to "assess" damages but not to withhold them. Thus, plaintiffs argue the trial court committed legal error in finding defendant could legally withhold liquidated damages from its payments to plaintiffs. Plaintiffs contend defendant was obligated to pay *478 the full amount due under the contract, then file suit against plaintiffs to recover liquidated damages. The trial court disagreed, stating: "There is nothing in the law that says if someone owes you money and you owe them money that you have to pay them first and then take your money back."
The trial court is correct that when two persons owe sums of money to each other, and those sums are liquidated and presently due, compensation extinguishes the obligation. La.C.C. art. 1893 (formerly La. C.C. arts. 2207-2209). When one of the obligations is unliquidated, the judge may make the adjustment when pronouncing the final decree. La.C.C. art. 1902 (formerly La.C.C. art. 2531). We need not determine whether the contract permitted the defendant to withhold liquidated damages (although we note even plaintiffs' expert architect testified that it does) because we find the trial judge had the authority to declare the debts compensated when he found liquidated damages were due.

CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing plaintiffs' suit is affirmed. Plaintiffs are cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] Willo Products Co., Inc., intervened in the suit, seeking to annul the assignment of accounts receivable from Utley to Aetna. The record shows no disposition of that intervention.
[2] The State answered the appeal, stating it did not seek reversal of the judgment but sought a correction of the trial court's reasons for judgment regarding whether it sustained actual damages. This is not a proper use of the answer to appeal because it does not seek modification, revision, or reversal of a judgment. See La. C.C.P. art. 2133. The trial court's reasons for judgment form no part of the judgment.
[3] Neither party could find Back so he could testify at trial.
[4] A chase is an enclosed area through which heating and air conditioning ducts, plumbing lines, and electrical conduits are run.
[5] Acts 1984, No. 331, § 1, effective January 1, 1985.
[6] Current Civil Code article 1991 contains a similar provision.
[7] Under either version of the Civil Code the result would be the same. We have determined the law in effect at the time the contract was confected is applicable.
[8] Plaintiffs have seized upon dicta in O & M which states "[w]hether time is of the essence... often ... depends not upon the terms of the contract itself, but upon the extraneous circumstances and facts and upon how the parties themselves looked upon the importance or unimportance of the time element." 576 So.2d at 1037. What plaintiffs ignore is that the preceding sentence provides putting in default is a condition precedent to recovery of liquidated damages unless "by stipulation in the contract or by the nature and circumstances of the agreement time is of the essence thereof" (underlining added). It is clear from this language that if there is a stipulation in the contract, there is no need to look beyond that stipulation.