STEWART, J.
hAU Seasons Construction, Inc. (“ASC”) filed suit against the Mansfield Housing Authority (“MHA”) to recover $22,200 withheld as liquidated damages under a construction contract between the two parties. MHA asserted a reconventional demand seeking damages, costs, and attorney fees for ASC’s alleged failure to perform its contractual obligations. The pertinent issue was the date of substantial completion of the project, which the trial *415 court resolved in ASC’s favor. MHA appealed the judgment ordering it to pay damages. Finding no manifest error, we affirm.
FACTS
The parties entered a contract on November 18, 1999, requiring ASC to re-roof and replace the fascia and soffit on 28 buildings, each a duplex, at a contract price of $116,725. The contract provided for the date of commencement to be fixed in a “Notice to Proceed” letter, required the contractor to achieve substantial completion of the work not later than 120 calendar days from the “Notice to Proceed” date, and provided for liquidated damages in the amount of $200 per day for each day beyond the completion date. The “Notice to Proceed” letter was issued on December 20, 1999. Although the initial completion date was April 18, 2000, the completion date was extended ten days by agreement to April 28, 2000. A change order also increased the contract price to $118,137.
On April 18, 2000, Edward Angel, ASC’s owner and president, wrote to Ronnie Du-vall, the construction inspector on behalf of MHA’s architect, Alliance Inc., stating that the project was “100% complete,” other than | ¡punch list items which had not yet been received. Angel requested a certificate of substantial completion. By letter dated May 2, 2000, Duvall informed Angel that he could not determine the project to be substantially complete, and he included a punch list of items to be completed before issuance of a certificate of substantial completion. The letter informed Angel that the third pay application was being withheld and that “the amended contract completion date of April 28, 2000 has passed.”
The record includes a number of punch lists introduced into evidence by the parties as a joint exhibit. The first is a handwritten punch list dated April 18, 2000, covering 18 of the buildings. The second is a typed punch list dated May 2, 2000, which lists 10 general items (including cleaning debris, providing warranties, submitting payroll records, painting louvers, caulking, fixing gaps at electrical pole risers, and fitting holes around porch light fixtures) and two specific items (reconfiguring the “birdboxes” where the soffit line meets the eave to prevent water from seeping into the sub-frame and tucking the J-mold into the fascia at intersecting soffit fines) to be addressed on most of the buildings. The third is a typed punch fist dated April 18, 2000, of specific items applicable to thé 18 buildings covered on the handwritten fist. Monetary values are assigned for each item on the fist. The fourth is a typed list dated April 28, 2000, of specific items for the remaining 10 buildings with monetary values assigned for each item. The most significant items on the fists are the reconfiguration of the birdboxes and replacement of wavy fascia on a number of the buildings. The fifth and final fist is one-page dated August 18, 2000.
| ¡Additional correspondence in the record reflects a dispute between the parties over the substantial completion date, work on the punch fists, and the cause of the wavy fascia. ASC maintained that the wavy fascia was due to the age of the existing construction, while MHA attributed the problem to exposure of the sub-frame to the elements while awaiting replacement of the fascia. The certificate of substantial completion was finally issued on August 18, 2000, along with the final one-page punch fist. In the final payment to ASC, MHA deducted liquidated damages in the amount of $22,200 for the 111 days from the contract completion date of April 28, 2000, to August 18, 2000.
*416 ASC filed this suit to recover the amount deducted for liquidated damages. In its answer, MHA filed a reconventional demand for damages, costs, and attorney fees for ASC’s alleged failure to fulfill its contractual obligations. A bench trial took place, after which the trial court rendered judgment in favor of ASC upon determining that the work was substantially complete by the contractual deadline. This appeal by MHA followed.
DISCUSSION
MHA asserts that the trial court erred in concluding that substantial completion occurred on April 28, 2000, the contractual deadline, rather than on August 18, 2000, when the certificate for substantial completion was finally issued. MHA also asserts that the trial court failed to address its reconventional demand for damages. MHA argues that the trial court did not consider Duvall’s field reports which show problems and lack of progress over the course of the construction period. MHA also argues that |4the punch lists prepared by Duvall show that significant work remained on the project past the contract completion date. According to MHA, the 111 days it took ASC to complete the punch lists shows that substantial completion was not achieved on April 28, 2000.
ASC contends that the trial court correctly found substantial completion by the contract deadline. According to ASC, the issuance of the punch lists with dollar amounts listed for the items to be addressed indicated that substantial completion had been achieved. Moreover, ASC describes the items on the punch lists as minor and cosmetic in nature. ASC attributes the length of the lists to the number of buildings.
Article 9.8.1 of the General Conditions of the Contract for Construction defines substantial completion as “the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use.” La. R.S. 38:2241.1 similarly defines substantial completion applicable to public contracts as follows:
“Substantial completion” is defined for the purpose of this Chapter, as the finishing of construction, in accordance with the contract documents as modified by any change orders agreed to by the parties, to the extent that the public entity can use or occupy the public works or use or occupy the specified area of the public works for the use for which it was intended.
The first circuit in O & M Construction, Inc. v. State of Louisiana, Div. of Administration, 576 So.2d 1030 (La. App. 1st Cir.1991), writ denied, 581 So.2d 691 (La. 1991), explained that substantial completion, | ¿referred to also as substantial performance, can result even though deficiencies exist. The extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit of the work performed to the owner are all factors that may be considered to determine when substantial completion occurred. The contractor bears the burden of proving substantial completion.
The determination of when substantial completion occurred is a question of fact and is subject to the manifest error standard of review on appeal. Utley-James of Louisiana, Inc. v. State of Louisiana, Div. of Admin., Dept. of Facility Planning & Control, 94,2504 (La.App. 1st Cir.10/6/95), 671 So.2d 473; O & M Construction, Inc., v. State of Louisiana, Div. of Administration, supra.
*417 The pertinent issue in this appeal, as recognized by the parties and the trial court, is the date of substantial completion. If the project was substantially complete by the contract deadline of April 28, 2000, then liquidated damages, as provided in the contract for each day beyond the completion day, could not be deducted from the final payment.
Testifying on behalf of ASC was its president and owner, Edward Angel. He testified that all 28 buildings were completely re-roofed and that all vinyl siding on the soffits and fascia was completely attached as of April 28, 2000. He further testified that the buildings were fit for their intended use as housing and that they had been occupied during the work. Angel explained that after requesting the certificate of substantial completion by letter of April 18, 2000, ASC received a valued punch list from Ronnie |fiDuvaIl, the project inspector for MHA’s architect. Angel testified that the valued punch list signified substantial completion as it is generally given when substantial completion is obtained. The values represent the funds that can be withheld until the items on the list are complete. He further testified that ASC did not know that MHA was also assessing liquidated damages.
Angel testified that ASC completed the punch list items and that the final payment did not include any withholdings for unfinished or defective work. In addressing the problems noted on the punch lists, Angel stated that he had not received any notice that the work was not being done according to specifications, and he was not aware of any leakage through the birdbox-es. He explained that ASC had to remove the old fascia before applying the new, but he denied that ASC left bare wood exposed to the elements for an inordinate amount of time before installing the new vinyl siding. He attributed the wavy fascia to the condition of the sub-frame on the old buildings.
Ronnie Duvall, who was the construction inspector of MHA’s architect, testified that the third payment was withheld and the certificate of substantial completion denied due to lack of performance as indicated by the punch lists he prepared. Reports made by Duvall during construction were introduced into evidence to show, along with his testimony, the progress of the work performed by ASC. Duvall testified that ASC immediately began the roofing work and removal of the existing fascia and soffit, which left the bare wood exposed. Installation of the vinyl siding Dbegan sometime in mid to late February and was inconsistent. He concluded that ASC made a “mad dash” near the contract deadline to complete the work and that the materials were not properly installed. Photographs introduced into evidence show the construction site at various stages prior to the contract deadline. Du-vall testified that he prepared the punch lists to document the condition of the project and not to signify substantial completion.
On cross examination, Duvall stated that ASC had the option of removing the existing fascia as part of the job, and he admitted that he did not perform an exhaustive inspection of the wood sub-frame prior to installation of the new fascia. He testified that he did not discuss with anyone at ASC the problem with the birdboxes while construction was ongoing. He described the architectural plans for the project as “general.” He admitted that all the materials were up in April, but he claimed the work was not done in an appropriate form or fashion. Duvall also testified that ASC completed the items on the punch lists and received final payment with a deduction for liquidated damages only.
*418 Duvall stated that there have been ongoing problems with the work requiring reattachment of siding that was not properly-installed. Though he had not done a “thorough investigation,” he estimated that it would cost in excess of the $22,200 assessed as liquidated damages to correct the problems. Similar nonspecific testimony regarding the need to repair problems with the siding was also given by Robert T. Fisher, another inspector who worked on the project for Alliance. Sandra Jami-son, the |Rexecutive director of MHA, testified that siding still falls off the buildings. However, Jamison had not itemized the repair work needed or determined the cost of such work.
Finally, ASC presented the rebuttal testimony of Gerald Philips, who worked as construction superintendent on the project beginning sometime in the spring of 2000. Philips attributed the wavy fascia to warping of the original wood rafters by heat from the attics. He testified that ASC completed all work on the punch lists and that he did not consider the punch lists especially long considering the number of buildings involved in the project. He also noted that the new fascia was often torn away by the tenants for placement of telephone and cable lines.
Having reviewed the testimony and exhibits introduced into evidence, we cannot conclude that the trial court was clearly wrong or manifestly erroneous in finding that ASC achieved substantial completion by the contract date of April 28, 2000. The record establishes that the majority of the work had been performed on time. ASC had roofed the buildings and installed the siding by the contract deadline. The punch lists show that there were deficiencies in the work that required correction. However, the existence of defects does not necessarily preclude a finding of substantial completion. The length of the punch lists generated by Duvall was largely due to the number of buildings. A separate list was prepared for each of the 28 buildings, and these lists included many repetitive items needing attention. Most items listed were cosmetic in nature, such as caulking, removing debris, and repairing gaps. The major items were reconfiguration |9of the birdboxes and repair of the wavy fascia. Review of Duvall’s inspection reports show no mention of any dissatisfaction with the birdboxes even though siding had been installed on almost half the buildings by March 20, 2000. There was also conflicting evidence presented by the parties as to the cause of the wavy fascia. Even with the need for these repairs, the buildings were able to be used by MHA and were in fact occupied by tenants during the construction process. There was also some testimony that ASC repaired some damage to the siding caused by tenants during the time that it was working to complete the punch lists.
This case presents the classic problem of there being two reasonable views of the evidence. We are guided by the principle that when the trial court's findings are reasonable in light of the entirety of the record, we may not reverse even though convinced that we would have weighed the evidence differently if sitting as trier of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the trier of fact’s choice between them cannot be manifestly erroneous or clearly wrong. Id. Considering this record in its entirety, we cannot say that the trial court’s factual finding as to substantial completion was manifestly erroneous. The record establishes that the work was substantially complete by April 28, 2000, the contract deadline set by the parties. Because we find no error in the trial court’s conclusion that *419 the work was substantially complete by the contract deadline, we also find liquidated damages were improperly assessed against ASC.
|inMHA also assigned as error the trial court’s alleged failure to address its reconventional demand for damages due to ASC’s alleged failure to perform the final punch list items and for workmanship problems which have arisen. We find no merit in this assignment of error. The record includes only general allegations of ongoing problems and the need to bring the project up to standards acceptable to MHA and its architect. Neither Duvall, Fisher, nor Jamison testified with specificity as to the problems that are occurring, the actual costs to correct such problems, or damages to MHA. Thus, the record provides no basis for an award on MHA’s reconventional demand and no reason for remand.
CONCLUSION
For the reasons stated, we affirm the trial court’s judgment and assess costs of appeal to the appellant, Mansfield Housing Authority.
AFFIRMED.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
hi respectfully concur.
The claims of Mansfield Housing Authority (“MHA”) for stipulated damages are for damages for delay in performance by All Seasons Construction (“ASC”). As such, the provisions of the Civil Code can be followed for the resolution of this dispute. A certificate of substantial completion did ultimately result in this case and, as the majority further addresses, there is no proof of defective performance of the contract for shoddy workmanship, leaving only the claim for delay or moratory damages computed by the stipulated daily charge as set forth in the contract.
Under these circumstances, the following Civil Code articles apply:
Article 2010: An obligee may not avail himself of a clause stipulating damages for delay unless the obligor has been put in default.
Article 1989: Damages for delay in the performance of an obligation are owed from the time the obligor is put in default.
The fact dispute in this case concerning whether ASC had clearly and substantially performed by April 28 does not pertain to a claim for compensatory damages but only to the starting timé for the running of the daily stipulated damages. Under these circumstances, the time of default could not be understood by the parties due to the expectation of some continued work after substantial completion. The obligor, ASC, therefore, was not put in default by the mere arrival of the April 28 date and the first sentence of La. C.C. art.1990 is inapplicable. This situation required a showing by MHA that it put ASC in default by a clear notice that substantial completion had not occurred by April 28 and that the moratory damages ^stipulated in the contract were accruing. The back and forth between the parties over punch list items does not represent such notice. Therefore, I need not decide whether substantial performance occurred by April 28 or only by August 18. As a matter of law, the requirement for a putting in default was not shown to have occurred.