# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# (NOT FOR PUBLICATION)

**12-302**

**CENTRAL ELECTRIC COMPANY
OF ALEXANDRIA, INC.**

**VERSUS**

**ENGLAND ECONOMIC & INDUSTRIAL
DEVELPOMENT DISTRICT**

**\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 210,104
HONORABLE GEORGE C. METOYER, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Judges Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty.

**AFFIRMED.**

Kracht Frazier Madison, LLP
Scott E. Frazier
5149 Bluebonnet Blvd.
Baton Rouge, LA  70809
(225) 293-4568
**ATTORNEY FOR PLAINTIFF/APPELLANT**
Central Electric Company of Alexandria, Inc.

Provosty, Sadler, Delauny, Fiorenza & Sobel, APC
Ronald J. Fiorenza
John D. Ryland
Matthew J. Guy
P.O. Drawer 1791
Alexandria, LA  71309-1791
(318) 445-3631

**ATTORNEY FOR DEFENDANT/APPELLEE**
England Economic & Industrial Development District

**Cooks, Judge**

**FACTS AND PROCEDURAL HISTORY**

Central Electric Company of Alexandria, Inc. (Central) was the successful public bidder for an airport electrical construction project at the Alexandria International Airport in Alexandria, Louisiana in June of 1999. The public bid was solicited by England Economic & Industrial Development District (EEIDD). URS Corporation (URS) provided the engineering design and project administration with Hutchinson & Hutchinson, Professional Engineers (Hutchinson) hired as the local professional engineer for the project. EEIDD began using the newly constructed system in June of 2000. URS certified the project as substantially complete with an effective date of July 28, 2000, after addressing multiple items on several punch lists submitted by EEIDD. EEIDD has never acknowledged that the project was substantially complete and refused to sign the certificate prepared by URS.

The original bid for the project was $737,859.60. Additions and deletions in the contract, which included the addition of approximately 200,000 feet of new cable and several line-item credits, resulted in an additional net cost of $13,582.20, making the final cost of the project $751,441.80. Approximately one year after URS certified the project as substantially complete, EEIDD made a $500,000.00 payment to Central bringing the total payments made to $650,236.52. At the time of this sizeable payment, EEIDD had been using the runway daily for over a year. EEIDD admitted it retained the sum of $36,892.98 to cover disputed claims for work EEIDD claimed was either not performed in accordance with the contract or not performed satisfactorily. The total amount remaining unpaid to Central according to Central's calculations is $101,205.28, which it claims include additional work performed outside the contract requested by EEIDD.

Central attempted to satisfy the items listed on multiple punch lists submitted by EEIDD but eventually became frustrated with the continuing multiple requests for items they believed went beyond the contracted services. EEIDD continued to insist that the contract specifications had not been fulfilled and refused to make any further payments. EEIDD attempted to have more new wire installed at no additional cost but Central refused to comply with this request for which no change order was given.

Central filed suit on August 30, 2002, seeking recovery of what it claimed was the unpaid balance for its work. EEIDD reconvened asserting it was entitled to damages in an amount equal to the cost of completely redoing the entire original electrical project. The airport has operated the runway worked on by Central for over ten years without interruption, *fully certified by the FAA (Federal Aviation Administration)*, despite the claims made by EEIDD alleging Central's work on the electrical project for this runway was wholly inadequate.

The parties agreed to a bench trial. The trial court ruled from the bench stating:

> This court notes and finds that the Plaintiff has failed to prove his claim for unpaid funds for the work done according to the contract. Testimony reveals that the work was lacking in its completeness or compliance with all of the specifications and plans.

> The court further notes that the Plaintiff's claim for unpaid funds is dismissed.

> That the work was substantially completed and that Plaintiffs in Reconvention cannot claim a rebate for work that is still functioning for its intended purpose, even after 10 years later.

> Thus, the Plaintiff's claim in reconvention is dismissed.

> Cost is to be equally split.

## LEGAL ANALYSIS

Both parties have appealed. Central asserts the trial court erred as a matter of law in failing to award damages for additional payments after finding the work was

substantially complete, and in finding EEIDD has used the runway for over ten years without interruption since the date Central completed the work. EEIDD asserts the trial court manifestly erred in finding the work was substantially complete, and in failing to award damages for remediation.

Contracts with public entities like EEIDD are subject to the provisions of LA.R.S. 38:2241.1, which provides in pertinent part:

> 'Substantial completion' is defined for the purpose of this Chapter, as the finishing of construction, in accordance with the contract documents as modified by any change orders agreed to by the parties, *to the extent that the public entity can use or occupy the public works or use or occupy the specified area of the public works for the use for which it was intended.* The recordation of an acceptance in accordance with the provisions of this Section upon substantial completion shall be effective as an acceptance for all purposes under this Chapter. (emphasis added)

There is no recorded acceptance of this project as EEIDD refused to sign such an acceptance. The determination of whether there has been "substantial completion" on a public works project, as defined in La.R.S. 38:2241.1, is a question of fact left to the broad discretion of the trier of fact and will not be disturbed on appeal absent manifest error. *See Ortego v. Dupont*, 611 So.2d 792 (La.App. 3 Cir. 1992).

> Factual determinations in civil cases are reviewed under the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La.5/22/09), 16 So.3d 1065. This standard 'precludes the setting aside of the [trial] court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.' *Id.* at 1087.
>
> Review of credibility determinations under the manifest error standard requires that where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Hebert v. Rapides Parish Police Jury*, 06-2001, 06-2164 (La.4/11/07), 974 So.2d 635. Unless documents or objective evidence so contradict the witness's story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, a fact finder's determination that is based on a

credibility determination can virtually never be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La. 1989).

*Hannie v. Guidry*, 10-216, pp. 9-10 (La.App. 3 Cir. 10/6/10), 48 So. 3d 396, 403.

In *Gala v. Harris*, 11-654, p. 3, (La.App. 3 Cir. 11/2/11), 77 So.3d 1065, 1067-68, this court reiterated the factors to be considered when making a determination of "substantial completion" or "substantial performance"[1], on a construction contract:

> In disputes involving construction contracts, whether the contractor has substantially performed determines whether he will recover the full contract price. *Ortego v. Dupont*, 611 So.2d 792 (La.App. 3 Cir. 1992). Whether a contractor has substantially performed under the contract is a question of fact. *Id.* Factors to consider in determining whether substantial performance exists are 'the utility to the owner of the work performed, the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, and the ease of correction.' *Walter Lafargue Real Estate, Inc. v. Raines*, 420 So.2d 1309, 1311 (La.App. 3 Cir. 1982). If the contractor has not substantially performed under the contract, i.e. there is unfinished work, the contractor is limited to recovery in quantum meruit, and his recovery will be reduced by the amounts the owner must expend to complete the project. *Id.* 'The burden of proof of unfinished work or defects and the cost of completion or correction is upon the owner.' *Boydstun v. Johnston*, 401 So.2d 629, 631 (La.App. 3 Cir.), *writ denied*, 404 So.2d 1262 (La. 1981).

The trial court's factual determinations in this case turn on the credibility of the witnesses. A review of the record discloses no manifest error in the trial court's finding the contract at issue was substantially completed over ten years ago. Like the trial court, we are bolstered in this conclusion by the undisputed fact that the airport runway, which was the subject of the electrical contract at issue, has been used without interruption for over ten years since the time Central claims it completed the work in accordance with the contract and change orders. The record reflects there was only one signed change order. This resulted in changes to the

---

[1] "Substantial completion" and "substantial performance" as used regarding construction projects are essentially the same concept. *See*, *All Seasons Const., Inc. v. Mansfield Housing Auth.*, 40,490 (La.App. 2 Cir. 1/25/06), 920 So.2d 413.

original contract and affected the amount owing to Central. The record also reflects that there are several items on the "punch lists" submitted by EEIDD to Central which are not part of the original contract and for which there is no change order. In 2001, Central informed EEIDD that it would not address several items on the punch list dated August 29, 2001, unless and until it received signed change orders authorizing such additional work at an increased cost. EEIDD did not issue change orders but persisted in asserting that these items on the punch list were covered under the original contract. Central installed new wire as provided in the contract and one change order but EEIDD wanted more new wire free of charge. The professional engineer on this project, Jo Ann Rayner (Rayner),[2] found the project was substantially complete in 2000 and recommended the project be closed out and full payment be made to Central. At trial she testified in her opinion, the project was substantially completed in 2000.

EEIDD insisted at trial, and maintains on appeal, that it never received any as-built drawings of the new electrical work done by Central. Rayner testified she personally provided URS with as-built drawings of the project. According to her testimony, URS went through a succession of people in charge of getting these drawings to EEIDD which she opined may have been the cause of URS failing to get as-built drawings to EEIDD if indeed they had failed to deliver the drawings. Nevertheless, she further testified that when she learned EEIDD claimed it did not have a copy of the as-built diagrams of the electrical work, she personally printed and delivered a second set of as-built diagrams directly to EEIDD. EEIDD asserted at trial and in this appeal that the as-built drawings were destroyed in a fire when Central's truck containing a copy of the as-builts burned during the project. Rayner testified there were multiple copies of the as-built drawings kept at

---

[2] We note that Jo Ann Rayner is the same individual sometimes referred to as Jo Ann Hutchinson.

5

different locations in addition to the copy in the burned truck. She further testified as the project engineer she kept the original copy in her office. According to her testimony, the drawings were updated daily with reports from the job site. Apparently the trial court found Rayner's testimony credible. It was within the broad discretion of the trier of fact to determine whom to believe.

EEIDD asserted Central's workmen used a backhoe to pull new wire through conduits, and that such an inappropriate practice can harm the integrity of the new wire. Central's witnesses denied that its employees engaged in such practices on this project. Rayner and Central's witnesses testified that the new wire was tested before installation and it passed the 50-megohm test as required. They further testified the new wire was again tested after it was installed but before it was connected to the old wiring. Again the new wire passed the 50-megohm test. After connecting the new wire to existing wire another Ohm test was performed, and, as Central expected, the wire now failed the 50-megohm test, indicating the new wire was not the cause of the whole system failing to meet a 50-megohm test. Thus the record supports a reasonable conclusion that regardless of whether or not a backhoe was used to pull any of the new wire, the new wire tested as it should before it was installed and after it was installed. It was within the trial court's discretion to weigh the evidence presented and make such credibility determinations concerning conflicting testimony.

EEIDD also asserts that the wires replaced by Central were not properly tagged with brass tags identifying the point of origin to destination. Rayner testified Central originally placed brass tags on the wires in accordance with the provisions of the original contract, but EEIDD demanded the brass tags be replaced with adhesive tape labels placed on each wire. After Central complied with this time consuming demand at its cost, EEIDD then insisted that the contract called for

brass tags and that such tags should be placed on the wires. At Rayner's request, Central complied with this demand.

Rayner also testified that Central had to expend additional labor beyond what was contemplated in the original contract because, although the contract indicated Central could perform its work uninterrupted, after work began on the project, EEIDD informed Central that the runway on which they were working had to be made operable every day before Central left the job site. Additionally, the runway could not be worked on in inclement weather due to safety regulations, even though the weather was not such as would interfere with Central performing its work. Rayner and Central's owner testified that this was costly to Central but Central did not impose those additional labor costs on EEIDD. It was for the trial judge to assess the credibility of this testimony.

Likewise, the trial court was not convinced that EEIDD owed any further payment to Central. While the record supports the trial court's finding that the project was substantially completed in 2000 as defined in L.A.R.S. 38:2241.1, as certified by the project engineer, the record also supports its factual finding that Central is not entitled to any payments in addition to the amounts it has already been paid. Again, this finding of fact is based upon credibility determinations left to the broad discretion of the trier of fact. We can find no manifest error in the exercise of the trial court's discretion regarding the credibility of the witnesses appearing in the matter. We therefore will not disturb the trial court's judgment. We affirm the judgment of the trial court and assess costs of this appeal equally to both parties.

**AFFIRMED**.

7