688 So.2d 1133 (1996)
James A. RAY, et ux., Plaintiffs Appellants,
v.
Edward H. LEATHERMAN, et al., DefendantsAppellees.
No. 96-542.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Writ Denied January 6, 1997.
Victor Herbert Sooter, Alexandria, for James A. Ray, et ux.
William M. Ford, Susan Fiser, Alexandria, for Edward H. Leatherman, et al.
Michael Hathorn Davis, Alexandria, for the Cranfords.
*1134 Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
The sole issue presented in this case is whether plaintiffs, James and D. Laverne Miller Ray, are entitled to a deficiency judgment against defendants, Robert Cranford, Linda Cranford, and Merrilee Leatherman. The trial court ruled that a Bankruptcy Court order issued in the case of Dr. Edward Leatherman, Merrilee Leatherman's former husband, operated to extinguish the defendants' obligation under the promissory note and mortgage upon which the Rays had filed executory proceedings and the subsequent deficiency judgment action. The trial court dismissed the Rays' action.
From this judgment, the Rays filed this appeal. The Cranfords and Merrilee Leatherman answered the appeal, asserting that this court should award damages for frivolous appeal. For the following reasons, we affirm the trial court's judgment dismissing the Rays' action for deficiency judgment. We also find that the defendants are not entitled to damages for frivolous appeal.

FACTS
On July 31, 1981, the Rays sold four lots of immovable property located in Pineville, Louisiana, to the Cranfords. The purchase price of $55,500 consisted of $13,500 cash and a $42,000 promissory note at twelve percent interest to be paid monthly over a twenty year period. The promissory note was secured by a mortgage on the property. The sale was owner-financed by the Rays.
On September 28, 1984, the Leathermans purchased the property from the Cranfords. The Leathermans paid $4,000 cash and assumed the Cranfords' obligation to pay the aforementioned promissory note. Our review of the documents pertinent to this transaction indicates that the Rays did not release the Cranfords from their obligation to pay the promissory note.
On October 30, 1989, Dr. Leatherman filed a petition for legal separation from Merrilee Leatherman. On January 4, 1990, he filed a petition seeking the partition of community property. On February 1, 1990, the Leathermans did not make the monthly payment on the note. Their failure to pay constituted a default on their assumed obligation under the note.
On April 26, 1990, Dr. Leatherman filed a voluntary petition in the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division. Chatham Reed was Dr. Leatherman's attorney in his bankruptcy proceeding. Dr. Leatherman listed James Ray as a secured creditor and the Cranfords as unsecured contingent creditors. Both the Rays and the Cranfords were sent notice of Dr. Leatherman's bankruptcy. The Bankruptcy Court issued an automatic stay order pursuant to 11 U.S.C. § 362 on the day of Dr. Leatherman's filing for bankruptcy.
On May 30, 1990, the Bankruptcy Court, on motion of Dr. Leatherman, removed the community property partition proceeding from state district court. On June 4, 1990, the Rays filed a proof of claim. Therein, the Rays asserted the value of their secured claim to be $35,675.04. The Rays attached to their proof of claim the original note, mortgage, and act of sale to the Cranfords along with the sale and assumption from the Cranfords to the Leathermans.
In early September 1990, the Rays, through their attorney Victor Sooter, filed a motion for relief from the automatic stay. In their motion, the Rays asserted that the mortgaged property had no equity and that the Bankruptcy Trustee declined to administer it as part of the estate. They requested the automatic stay be lifted to allow them to foreclose on the property because of a lack of adequate protection of their security interest. The Bankruptcy Court set a hearing on this matter for October 15, 1990.
Prior to the hearing, through mutual negotiations between Mr. Reed and Mr. Sooter, the Rays and Dr. Leatherman agreed to the lifting of the automatic stay insofar as the property at issue was concerned. On October 15, 1990, the Bankruptcy Court judge signed an order lifting the automatic stay. The order allowed the Rays to foreclose upon their security interest in the property. It also included the following language:

*1135 IT IS FURTHER ORDERED that any foreclosure shall be in rem only, and that the stay is lifted in full satisfaction of the underlying obligation, including the July 31, 1981 note;
IT IS FURTHER ORDERED that the underlying obligation shall be extinguished by the stay being lifted, whether a plan is confirmed in this case or if it is dismissed;
IT IS FURTHER ORDERED that the debtor is authorized and directed to execute and deliver a dation en paiement of the described property, in full satisfaction, upon request by the creditor.
The above language was drafted through the negotiations which took place between the parties. On the hearing date, Mr. Reed presented the order to the Bankruptcy Court judge. Mr. Sooter, the Rays' attorney, did not appear for the hearing and did not contest the inclusion of the additional language in the order.
On December 17, 1990, the Bankruptcy Court judge signed an order approving the compromise of the community property partition litigation. In their compromise agreement, Dr. and Mrs. Leatherman agreed to indemnify and hold each other harmless for any outstanding balances owed on real estate each individually received pursuant to the agreement.
On March 1, 1991, the Bankruptcy Court judge signed an order confirming Dr. Leatherman's Chapter 11 reorganization plan.
On September 12, 1991, the Rays filed a petition for executory process naming Dr. Leatherman, Merrilee Leatherman and the Cranfords as defendants. Therein, the Rays prayed for the seizure and sale of the mortgaged property. The next day, the trial court signed an order issuing a writ of seizure and sale. The Rapides Parish Sheriff's Office seized the property and sold it to the Rays for $10,667 at a public auction held on February 26, 1992.
On June 5, 1992, the Rays filed the instant action for a deficiency judgment against the Cranfords and Merrilee Leatherman. Merrilee Leatherman and the Cranfords filed separate answers in which they asserted that the executory proceeding violated the Bankruptcy Court's order which allowed the Rays to proceed in rem, i.e., only against the property. They also maintained that, on the merits, the Rays were not entitled to a deficiency judgment because of their failure to obtain a proper appraisal in the executory proceeding.
On September 10, 1992, Dr. Leatherman intervened and asserted substantially the same defenses as those maintained by his former wife and the Cranfords. He also asserted numerous other affirmative defenses including discharge in bankruptcy.
On January 7, 1994, Dr. Leatherman and the three original defendants, Merrilee Leatherman and the Cranfords filed a motion for summary judgment in which they maintained that they were not personally liable for the deficiency. On February 7, 1994, the trial court denied the motion for summary judgment. The trial judge determined that a material factual dispute existed concerning the effect of the Bankruptcy Court order which had lifted the automatic stay.
The trial of this matter was held on October 25, 1995. The two primary contested issues concerned whether the Bankruptcy Court order precluded the Rays from seeking a deficiency judgment against Merrilee Leatherman and the Cranfords personally and whether the Rays complied with the appraisal requirements of executory process.
As to the first issue, Mr. Reed testified on behalf of the defendants. He was accepted as an expert in bankruptcy law. He testified that Dr. Leatherman did not want to keep the property in the bankruptcy estate, so he agreed not to oppose the lifting of the automatic stay in favor of the Rays. Mr. Reed stated that Mr. Sooter drafted the first version of the Bankruptcy Court order and faxed it to his office. Mr. Reed was not satisfied with the language of the order; he inserted the three paragraphs quoted above and sent the revised order to Mr. Sooter with a letter inquiring as to whether Mr. Sooter or his clients objected to the additional language. Mr. Reed explained that, when Mr. Sooter voiced no objection to the substance of the revised order, he presented it to the Bankruptcy Court judge on the hearing date. *1136 The Bankruptcy Court judge signed the order.
Mr. Reed testified that, in adding the three paragraphs to the order, he intended to extinguish and satisfy the debt owed by both the Leathermans and the Cranfords. He opined that the Bankruptcy Court had jurisdiction to do so since all the parties to the note were named parties in the bankruptcy proceeding, with the Rays and Cranfords being listed as creditors. He stated that, in consideration for the lifting of the stay, the Bankruptcy Court and the trustee gave up the property to an in rem foreclosure or a dation en paiement. Mr. Reed characterized the order as having resulted from the Rays' exchange of the debt extinguishment for the ability to foreclose on the property.
On cross examination, Mr. Reed admitted to having no communications with the Cranfords or their attorney during the negotiations concerning the lifting of the automatic stay. He stated further that the term "in rem" means "in rem" as to all parties with potential "in personam" liability, including Merrilee Leatherman and the Cranfords.
Victor Sooter testified via narrative that there was no communication between his office and Mr. Reed's office on the issue of the release, pursuant to the order, of non-bankruptcy debtors such as Merrilee Leatherman and the Cranfords. Mr. Sooter stated that, in his opinion, the reference to "in rem only" in the order applied only to the debtor in bankruptcy, Dr. Leatherman.
Under questioning by the trial judge, Mr. Sooter stated that the Rays did not timely appeal the Bankruptcy Court order to the Federal District Court. Additionally, he testified that he did not file the executory process petition "in rem" as the Bankruptcy Court order required.
On the issue of the Rays' compliance with the appraisal, the testimony centered on the fact that Mr. Ray's signature, not that of his appraiser John Girlinghouse, appeared on the appraiser's oath form. The defendants also asserted that Mr. Girlinghouse's appraisal was not entered into the record in the executory proceedings. Because the trial judge did not rule on this issue, we need not go into a detailed summary of the testimony and evidence on this issue.
After all testimony and evidence were adduced, the trial judge rendered oral reasons for judgment. He determined that Mr. Reed drafted the Bankruptcy Court order with the intent to extinguish the debt of all parties to the note. The trial judge found, conversely, that Mr. Sooter's intent was not the same as Mr. Reed. He concluded that the Bankruptcy Court order was "absolutely unambiguous" in decreeing that the underlying obligation, including the July 31, 1981 note, was extinguished. The trial judge reasoned that extinguishment of the note resulted in the extinguishment of all personal obligations under the note. He determined that the appropriate remedy for the Rays would have been to appeal the Bankruptcy Court order, which is now "basically res judicata "with regard to liability between the parties under the note. The trial judge ordered the Rays' action dismissed without ruling on the issue of whether the appraisal process was proper.
On October 31, 1995, the trial court signed a judgment in accord with these reasons which dismissed the Rays' demand for a deficiency judgment. The Rays' subsequent motion for a new trial was denied. They then filed this devolutive appeal, to which the defendants answered seeking damages for frivolous appeal.

LAW
We must determine whether the trial court correctly concluded that (1) the Bankruptcy Court order clearly and unambiguously extinguished the July 31, 1981 note as to all potentially liable obligors, and that (2) the Bankruptcy Court order was "res judicata" insofar as the liability of the parties to the note is concerned.
Our review of the proceedings in the Dr. Leatherman bankruptcy case reveals that the property at issue contained small wood-framed cottages which had fallen into disrepair. In fact, some of the buildings were scheduled for condemnation. The Rays' motivation, as a creditor, for having the automatic stay lifted was to foreclose on the property and possibly recoup the *1137 amounts they were owed through the sale of the property. Because he had no equity in the property, Dr. Leatherman agreed to the lifting of the automatic stay. As creditors, both Merrilee Leatherman and the Cranfords received notice of the Rays' motion to lift the stay. The order which lifted the stay contained clear and broadly-worded language reflecting the nature of the compromise reached: the lifting of the automatic stay and allowance of the Rays to execute on the property, i.e., "in rem only," in exchange for the extinguishment of the note.
By its very terms, the Bankruptcy Court order allowed the Rays to collect on the obligations under the note by proceeding only against the property. The order also went further in expressly extinguishing the note and obligations thereunder. The Bankruptcy Court had both the jurisdiction and the power to do this as to all parties to the note since Merrilee Leatherman was part of the proceedings insofar as the community property partition was concerned and the Cranfords were contingent creditors to whom Dr. Leatherman could have been liable had not the entirety of the obligations under the note been extinguished. The trial judge's conclusion in this regard, which is amply supported by the wording of the Bankruptcy Court order itself and the testimony of Mr. Reed, constitutes a correct interpretation of the order.
If we were attempting to determine whether a pre-1991 state court judgment precluded the Rays from proceeding personally against the defendants herein, then La. R.S. 13:4231, as it read prior to January 1, 1991, would apply. However, because we are concerned with the preclusive effect of a Bankruptcy Court order, the federal res judicata law applies. In Reeder v. Succession of Palmer, 623 So.2d 1268, 1271-72 (La.1993), the Supreme Court of Louisiana stated:
When a state court is required to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, it is the federal law of res judicata that must be applied. McNeal v. Paine, Webber, Jackson & Curtis, 249 Ga. 662, 293 S.E.2d 331 (1982); Anderson v. Phoenix Inv. Counsel of Boston, 387 Mass. 444, 440 N.E.2d 1164 (1982); Rennie v. Freeway Transport, 294 Or. 319, 656 P.2d 919 (1982); Jeanes v. Henderson, 688 S.W.2d 100 (Tex.1985), reh'g of cause overruled (May 1, 1985); Commercial Box & Lumber Co. v. Uniroyal, Inc., 623 F.2d 371, 373 (5th Cir.1980); Aerojet-General Corp. v. Askew, 511 F.2d 710 (5th Cir.), appeal dismissed and cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); Restatement (Second) of Judgments § 87 (1982); 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, Jurisdiction § 4468 (1981). Cf. Pilié & Pilié v. Metz, 547 So.2d 1305 (La.1989). Federal res judicata principles have been heavily influenced by the great advances in the Restatement Second of Judgments. Federal courts and commentators often cite and rarely depart from the Restatement view. 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4401 (1981).
Under federal precepts, "claim preclusion" or "true res judicata" treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach. Kaspar Wire Works, Inc. v. Leco Engineering & Mach., 575 F.2d 530 (5th Cir.1978) (Rubin, J., citing authorities). See Restatement (Second) of Judgments §§ 18-20 (1982).

*1138 Claim preclusion will therefore apply to bar a subsequent action on res judicata principles where parties or their privies have previously litigated the same claim to a valid final judgment. In most cases, the key question to be answered in adjudging the propriety of a claim preclusion defense is whether in fact the claim in the second action is "the same as," or "identical to," one upon which the parties have previously proceeded to judgment. The authorities do not provide a uniform definition of the terms "claim" or "cause of action" in connection with the application of res judicata. The clear trend, however, in the most recent decisions, in harmony with such procedural concepts as the "transaction or occurrence" test for compulsory counterclaims as stated in Federal Rules of Civil Procedure, Rule 13(a) and the "common nucleus of operative fact" standard for pendent federal jurisdiction of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), has been towards the adoption of § 24 of the Restatement 2d, of Judgments. That Section sets forth a "transactional analysis" as to what constitutes a "claim," the extinguishment of which prohibits subsequent litigation with respect to the transaction(s) from which it arose. A majority of the federal circuit courts, as well as the Claims Court, have thus far expressly adopted the Restatement's transactional approach. Annotation, Proper Test to Determine Identity of Claims for Purposes of Claim Preclusion by Res Judicata Under Federal Law, 82 A.L.R.Fed. 829, 837 (1987); e.g., Southmark Properties v. Charles House Corp., 742 F.2d 862 (5th Cir.1984). See Pilié & Pilié v. Metz, 547 So.2d 1305, 1310 (La.1989) (citing authorities).
Section 24 of the Restatement (Second) of Judgments (1982) adopts a "transactional" view of claim for purposes of the doctrines of merger and bar, as follows:
§ 24. Dimensions of "Claim" for Purposes of Merger or BarGeneral Rule Concerning "Splitting"
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
Illustrations of how the rule of § 24 applies to various situations are set forth in Restatement (Second) of Judgments § 25 (1982) as follows:
§ 25. Exemplifications of General rule Concerning Splitting
The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action
(1) To present evidence or grounds or theories of the case not presented in the first action, or
(2) To seek remedies or forms of relief not demanded in the first section.
In Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-654 and 95-671 (La.1/16/96); 666 So.2d 624, the supreme court applied the principles enunciated in Reeder, 623 So.2d 1268, to a Bankruptcy Court order confirming the debtor's Chapter 11 plan of reorganization. The supreme court reasoned as follows:
In this case, the Plan of Reorganization was confirmed by a federal bankruptcy court in the exercise of bankruptcy jurisdiction, which is federal question jurisdiction. Therefore, in accordance with our pronouncements in Reeder, federal res judicata law is applicable in this case.
A bankruptcy judgment, just as any judgment under federal res judicata law, bars a subsequent suit if all of the following *1139 tests are satisfied: 1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases. Matter of Baudoin, 981 F.2d 736 (5th Cir.1993); Eubanks [v. FDIC, 977 F.2d 166 (5th Cir.1992)].
Terrebonne Fuel & Lube, Inc., 95-654 and 95-761 at pp. 14-15; 666 So.2d at 633 (footnote omitted).
Although the Bankruptcy Court order in this present case lifted the automatic stay and, unlike in Terrebonne Fuel & Lube, Inc. did not constitute the confirmation of a reorganization plan, it is clear that the same standard should apply to the instant order. We conclude that the four-part test, cited in Terrebonne Fuel & Lube, Inc. from the Baudoin and Eubanks Federal Fifth Circuit cases, has been met in this case. First, both this case and the Leatherman bankruptcy, insofar as the subject property and note are concerned, involved the same parties. Additionally, we have previously found that the Bankruptcy Court had jurisdiction to render the order and to likewise affect the rights of the defendants herein, who were before that court but not as debtors in bankruptcy. Third, the Bankruptcy Court order is now a final judgment on the merits, having not been timely appealed by the Rays. Finally, the same cause of action, the Rays' action to seize and sell the property and collect on the July 31, 1981 note, was at issue in the Bankruptcy Court and is at issue in this executory process/deficiency judgment litigation. Therefore, we conclude that the trial court did not err in determining that the October 15, 1990 Bankruptcy Court order was res judicata and precluded the Rays from proceeding against Merrilee Leatherman and the Cranfords personally. The Rays' once-existing right to do so was compromised, extinguished and merged into the Bankruptcy Court order.
Defendants answered the Rays' appeal seeking an award of damages for frivolous appeal pursuant to La.Code Civ.P. art. 2164. Appeals are favored; unless the appeal is clearly and unquestionably frivolous, damages will not be awarded. Hampton v. Greenfield, 618 So.2d 859 (La.1993). We are required to strictly construe Article 2164 since it is penal in nature. Even if an appeal lacks serious legal merit, damages for frivolous appeal will only be awarded when it is clear that the appeal was taken solely for dilatory purposes or that the appellant does not seriously believe the position he advocates. Dear v. Mabile, 93-1188 (La.App. 1 Cir. 5/20/94); 637 So.2d 745.
We conclude that appellants' appeal, although not meritorious, was not taken solely for the purpose of delay. Additionally, it is clear that the Rays believe seriously in the position they advocate. Accordingly, defendant's demand for frivolous appeal damages is denied.

DECREE
For these reasons, the trial court judgment is affirmed.
All costs are to be paid by James and D. Laverne Miller Ray.
AFFIRMED.