# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-216

NICOL E. HANNIE

VERSUS

RAY ALLEN GUIDRY, ET AL.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-5071
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

************

## DAVID E. CHATELAIN[*]
## JUDGE

************

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain, Judges.

**AFFIRMED.**

J. Clemille Simon
Barry L. Domingue
Simon Law Offices
Post Office Box 52242
Lafayette, Louisiana 70505
(337) 232-2000
Counsel for Plaintiff/Appellee:
        Nicol E. Hannie

James E. Diaz, Jr.
John E. Ortego & Associates
4023 Ambassador Caffery Parkway, Suite 100
Lafayette, Louisiana 70503
(337) 988-7240
Counsel for Defendants/Appellants:
        State Farm Mutual Automobile Insurance Co.
        Ray Allen Guidry

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**CHATELAIN, Judge.**

The defendant driver and his insurer appeal the trial court's determination that the driver was 100% at fault for a center turn lane collision between his vehicle and the plaintiff's. Finding no manifest error in the trial court's findings of fact, we affirm its assessment of fault and its general damage award. We also deny the plaintiff's damages and attorney fees request for a frivolous appeal.

## FACTS

On November 28, 2003, vehicles driven by Nicol Hannie and Ray Guidry collided in the center turn lane on Kaliste Saloom Road in Lafayette as Mr. Hannie attempted to exit a shopping center parking lot situated at the corner of Kaliste Saloom Road and Ambassador Caffery Parkway. Mr. Hannie filed suit for damages against Mr. Guidry and his insurer, State Farm Mutual Automobile Insurance Company.

A trial on the merits was held on November 25, 2009. The parties stipulated that Mr. Hannie's vehicle sustained property damage totaling $19,202.99 and that Mr. Hannie incurred a rental expense of $5,039.05 and medical expenses totaling $1,155.50.

Evidence presented at trial established that the collision occurred on the day after Thanksgiving and that traffic was heavy at the time. Mr. Hannie was exiting the shopping center, intending to turn left onto Kaliste Saloom Road. At that point, Kaliste Saloom Road consists of five lanes, two lanes headed in opposite directions on either side of a designated center turn lane. Accordingly, Mr. Hannie had to cross two lanes of traffic and the center turn lane to complete his turn.

1

Mr. Hannie testified that traffic was stopped in the two traffic lanes he had to cross and was backed up as far as he could see to his left and right. He further testified that motorists in those two lanes provided him an opening to allow him to proceed with his turn, then waved him through the opening. Mr. Hannie related that he proceeded slowly across the two lanes and came to a stop before entering the turn lane. He described the opening in the traffic the motorists created as approximately fifteen or twenty feet. According to Mr. Hannie, he looked to the left and right before entering the turn lane, and, seeing no traffic approaching him, he proceeded forward; the impact took place "instantaneously" as he entered the turn lane. Mr. Hannie testified that he never saw Mr. Guidry's vehicle approaching him.

Todd Landry was in the vehicle immediately behind Mr. Hannie waiting to turn left as Mr. Hannie attempted to exit the parking lot. Mr. Landry testified that the two travel lanes of Kaliste Saloom Road heading toward Ambassador Caffery Parkway were occupied with vehicles as far left and right as he could see. He described the traffic as moving "at a snail's pace."

According to Mr. Landry, Mr. Hannie was at a complete stop at the shopping center exit when two vehicles on Kaliste Saloom Road stopped to allow him to exit. He described Mr. Hannie's maneuver as a "careful process of trying to go through . . . those vehicles to stop and observe if it's clear." Mr. Landry explained that Mr. Hannie carefully crossed the first lane of travel, then the second lane of travel, stopping and going. As Mr. Hannie was proceeding into the center turn lane, Mr. Landry saw a dark-colored truck exit the travel lane closest to the turn lane "in an erratic" manner, then accelerate quickly and proceed at "a rapid rate of speed," which he thought was "way too fast for the turning lane"; he estimated Mr. Guidry's

2

speed at forty miles per hour. Mr. Landry continued, relating that the turn lane was clear as Mr. Hannie proceeded into it, then "before you could honk the horn or anything there was a big collision" between Mr. Guidry's truck and Mr. Hannie's car. He further testified that before Mr. Guidry entered the turn lane, he (Mr. Guidry) was six or seven vehicles behind the vehicle in the travel lane closest to the turn lane that stopped to allow Mr. Hannie and him to exit the parking lot. Mr. Landry did not see any other vehicles in the turn lane before the accident. Mr. Landry opined that there was nothing Mr. Hannie could have done to avoid the collision.

Mr. Landry next testified that immediately after the collision he exited his vehicle to check on the people involved in the accident and was surprised that rather than asking Mr. Hannie if he was okay, both the driver and the passenger of the truck that collided with Mr. Hannie approached Mr. Hannie "accusing him of pulling out in front of them." Mr. Landry further testified that immediately after the collision, the driver and the passenger stated they were "turning up the road" with no explanation or description of where they were going. Mr. Landry related that at first he overheard Mr. Hannie ask Mr. Guidry why he was traveling in the turn lane if he was going to turn up the road. Later, after he had given his statement to the police, Mr. Landry overheard Mr. Guidry and his passenger state they were going to Sonic, the first establishment they would have encountered in the turn lane from where they were in traffic. Mr. Landry believed Mr. Guidry changed his destination to give him "justification for being in that turning lane."

Mr. Guidry testified that cars obstructed his view of Mr. Hannie's vehicle. He estimated that Sonic was approximately the distance of three car lengths from where he entered the turn lane and that he traveled at a speed of approximately thirty-five

3

miles per hour in the turn lane. He denied that he was traveling too fast for the traffic conditions, stating, "I was driving at a normal speed[,] and I observed the traffic to ensure that I wasn't going to hit anybody."

On cross-examination, Mr. Guidry agreed that Mr. Hannie cautiously began his turn and inched forward slowly. He also agreed that he could have stayed in the inside travel lane until he got closer to Sonic before entering the turn lane, as there was no place to turn left before Sonic, and Sonic was 697 feet from where he entered the turn lane, not the three to four car lengths he initially stated. Mr. Guidry testified that he first saw Mr. Hannie's vehicle when it was about three car lengths in front of his truck but denied having an opportunity to avoid the collision, testifying that he hit his brakes in an attempt to do so. Mr. Guidry further testified that the vehicles that stopped to let Mr. Hannie exit were large, similar to a Suburban, and prevented him from seeing Mr. Hannie's vehicle as it moved toward the turn lane. He also denied seeing the opening through which Mr. Hannie was proceeding.

Mr. Guidry's passenger, Peggy Prossen, is a resident of Florida; her testimony was presented via video deposition. Ms. Prossen testified that Mr. Guidry's truck was "high enough where I could see out and see a distance" and that she first saw Mr. Hannie moving across the first lane of traffic, then saw him move a second time. She recalled Mr. Guidry being maybe three or four car lengths behind the vehicles that stopped to let Mr. Hannie exit. She stated that however far back they were nothing interfered with her ability to see Mr. Hannie's car and that "probably nothing" prohibited Mr. Guidry from seeing it either. Ms. Prossen described the opening through which Mr. Hannie was proceeding as fifteen to twenty feet wide. She testified that she thought Mr. Hannie made eye contact with her and that at the

4

least, she saw his face looking toward Mr. Guidry's vehicle while stopped in the second lane, then his vehicle jumped out in front of Mr. Guidry's vehicle.

Ms. Prossen further testified that she did not think she would have allowed Mr. Guidry to drive thirty-five miles per hour in the turn lane as he testified he did. According to Ms. Prossen, she and Mr. Guidry planned to go to Sonic earlier that day and that it was to be their final destination. She stated that Mr. Guidry switched lanes when he saw the Sonic restaurant and denied that he was using the turn lane as a passing lane.

After the collision, Ms. Prossen reported to the police that Mr. Hannie and Mr. Landry were friends and had eaten a meal together before the collision. However, both Mr. Hannie and Mr. Landry denied knowing each other before the collision. Ms. Prossen testified that because the men were very nicely dressed, "they did not look like typical Louisiana men," so she assumed that they knew each other.

At the conclusion of the trial, the trial court determined that Mr. Guidry improperly used the center turn lane as a passing lane and found him 100% at fault. The trial court awarded Mr. Hannie special damages as the parties stipulated and general damages in the amount of $9,000.00.

The defendants appealed, assigning error with the trial court's assessment of fault. Mr. Hannie answered the appeal, seeking an increase in general damages and damages for frivolous appeal.

## ASSIGNMENTS OF ERROR

The defendants assign as error the trial court's assessment of 100% fault to Mr. Guidry, asserting that he was free from fault. They first argue that the trial court committed legal error in its conclusion of law as to the permissible distance a motorist

5

may travel in a center turn lane when intending to make a left turn from that lane; therefore, they argue that this court should conduct a de novo review of the trial court's assessment of fault. The defendants next argue that even if the manifest error standard of review is applied, Mr. Guidry was completely free from fault.

**DISCUSSION**

The trial court prefaced its fault determination with the following explanation of the lane markings where the collision occurred and their meanings:

> A no passing line is a single solid yellow line and it is used on two-lane roads to indicate zones where passing is prohibited. . . . A motorist is allowed to cross this line to make a turn.
>
> . . . .
>
> . . . There is something called two-way left turn channelization markings, and they are combinations of solid yellow and dashed yellow lines that are in the center of the roadway. The designated center lane, a center lane that is designated in this way may be used by vehicles traveling in either direction for left turn maneuvers only and this lane must never be used for passing.

*See* La. Driver's Guide "D" and "E," p. 30-33.

After providing its appreciation of the lane markings, the trial court outlined its reasons for determining that Mr. Guidry was 100% at fault for the collision:

> I find that the defendant entered the center lane at nearly the same time that the plaintiff made the decision to enter the center lane from the left lane of southbound traffic on Kaliste Saloom Road. . . . The impact occurred within the two-way left-turn channelization markings. The area of the roadway within this marking is reserved for vehicles making left turns. It is unlawful for motorists to use this section of the roadway to pass vehicles that are located in the travel lanes. Thus, the defendant was engaged in unlawful activity from the time he passed . . . the solid yellow line to the time that he collided with the plaintiff. The plaintiff was attempting to enter the northbound travel lanes of Kaliste Saloom Road from a private parking lot. The plaintiff's duty was described by the legislature in Revised Statute 32:124, which says the driver of a vehicle about to enter or cross a highway from a private road driveway, alley, or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alley

6

driveway, and shall yield the right-of-way to any pedestrian as may be necessary to avoid collision, and shall yield the right-of-way to all approaching vehicles so close as to constitute an immediate hazard. Now, there is case law in this Circuit that clarifies that the driver confronting the situation described in this statute must yield to the traffic that is on the favored roadway, and the favored roadway I understand to mean the portions of the roadway that are being used in a lawful way by the people who are using it. And so in this situation the favored roadway were the north and southbound lanes. The testimony is that . . . the plaintiff came to a stop at the stop sign in the parking lot prior to entering the roadway. He did not enter the roadway until the driver[s] who [were] stopped in the southbound lane on the outside of the road and the inside of the road gave permission by a hand signal to the plaintiff to enter the roadway. So the plaintiff yielded, and the individuals who had the right-of-way again yielded the right-of-way to the plaintiff. *The defendant did not have a right to use the center line as a passing lane.* The defendant's conduct was a substantial factor in bringing about the harm to the plaintiff. The defendant . . . did use the center lane as a passing lane and the plaintiff would not have been harmed but for the defendant's actions because the defendant's actions were using that lane improperly and if he had not used the lane improperly this collision would not have occurred. This defendant did owe a duty to the plaintiff to not use the center lane as a passing lane. He breached this duty. The risk and harm caused was within the scope of the protection afforded by the duty that was breached.

(Emphasis added.)

Louisiana Revised Statutes 32:124, as the trial court quoted, governs a driver's entrance to a highway from private property. The use of center turn lanes is governed by La.R.S. 32:82, which provides:

A. Whenever any highway has been divided into two roadways by a median, physical barrier, or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right hand roadway and *no vehicle shall be driven over, across or within the median, barrier or section, except through an improved opening or at a cross over or intersection* established under authority of this Chapter.

B. *No vehicle shall cross the painted continuous centerline of any multiple lane highway, except for the purpose of making a turn.*

(Emphasis added.)

7

***De Novo Review***

The defendants first contend that we must conduct a de novo review of the trial court's assessment of fault to Mr. Guidry because the trial court committed an error of law concerning the permissible distance a motorist may travel in a center turn lane. The basis of this contention is the trial court's observation that with regard to the two-way left-turn channelization markings of the center turn lane, it could not "conceive of a situation in which a motorist may lawfully use more than two vehicle lengths of that center lane that contains two-way left-turn to accomplish a left turn maneuver."

The trial court considered the directives contained in the Louisiana Driver's Guide Classes "D" and "E" in determining that Mr. Guidry was improperly using the center turn lane as a passing lane. We have reviewed these directives in light of La.R.S. 32:82 and find them illustrative of the restricted use of center turn lanes. *See Brewer v. J.B. Hunt Transp., Inc.*, 09-1408, 09-1428 (La. 3/16/10), 35 So.3d 230, *aff'g* 08-1666 (La.App. 1 Cir. 3/18/09), 9 So.3d 932 (where the supreme court affirmed the first circuit's de novo determination that both plaintiff and defendant drivers were at fault in causing the accident at issue but increased the fault assessed to the defendant driver; both courts relied on directives set forth in the Driver's Guide for their assessments).

Even though, under the facts of this case, there was no need for the trial court to enunciate a bright-line, two-car-length rule for the execution of a left turn in a center turn lane, we find no error with the trial court's determination that a motorist can only travel a limited distance in a center turn lane without violating this provision. Clearly, in the factual context of this case, Mr. Guidry was undeniably

8

using the center turn lane to pass traffic in the travel lanes, not to make a left turn, as the minimum distance he had to travel to make a left turn was 697 feet.

Furthermore, an error involving the application of an incorrect principle of law warrants a de novo review by the appellate court only if legal error was prejudicial, meaning it "materially affect[ed]" the outcome of the trial court's fact finding process and "deprive[d] a party of substantial rights." *Evans v. Lungrin,* 97-541, p. 7 (La. 2/6/98), 708 So.2d 731, 736. As shown by the discussion which follows, if the trial court's conclusion that a motorist who traveled more than two car lengths in a center turn lane without turning did so in violation of La.R.S. 32:82 was legal error, it did not prejudice Mr. Guidry; therefore, a de novo review is not warranted.

### *Manifest Error Review*

The trier of fact's allocation of fault required by La.Civ.Code art. 2323 is a fact determination. *Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138 (La. 5/20/03), 851 So.2d 959. Factual determinations in civil cases are reviewed under the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.,* 08-1163, 08-1169 (La.5/22/09), 16 So.3d 1065. This standard "precludes the setting aside of the [trial] court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Id.* at 1087.

Review of credibility determinations under the manifest error standard requires that where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Hebert v. Rapides Parish Police Jury*, 06-2001, 06-2164 (La. 4/11/07), 974 So.2d 635. Unless documents or objective evidence so contradict the witness's story or the

9

story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, a fact finder's determination that is based on a credibility determination can virtually never be manifestly erroneous or clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La.1989).

***Assessment of Fault***

The defendants argue that the trial court's assessment of fault is inaccurate because Mr. Guidry was traveling on the favored street; therefore, they contend that Mr. Hannie owed a higher duty of care than Mr. Guidry.

The care Mr. Hannie owed was addressed by this court in *Shelvin v. Allstate Insurance Co.*, 99-833 (La.App. 3 Cir. 11/3/99), 747 So.2d 160, 162, (quoting *Valin v. Barnes*, 550 So.2d 352, 355 (La.App. 3 Cir.), *writ denied*, 552 So.2d 399 (La.1989) (emphasis added):

> A motorist who is about to enter a roadway from a private driveway is required to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. Unusual, extreme, and high care toward favored traffic is required of such a motorist under the case law. Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. *The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of the statute. [La.R.S. 32:124.] The presumption or assumption may not be relied on by a motorist who is proceeding unlawfully before or after he sees the intruding vehicle.*

Mr. Guidry cannot rely on the presumption drivers may enjoy when they proceed lawfully on a favored street because he was using the center turn lane for passing in contravention of La.R.S. 32:82. Accordingly, Mr. Guidry's claim that he could rely on that presumption is without merit. Furthermore, even if Mr. Guidry had

not been using the center turn lane to pass other traffic, he could have been assessed with fault if the facts warranted. *See Slagel v. Roberson*, 37,791, 37,792, 37,793 (La.App. 2 Cir. 11/18/03), 858 So.2d 1288, *writ denied*, 03-3508 (La. 3/12/04), 869 So.2d 824.

Our review of the record shows that the testimonies of Mr. Hannie and Mr. Landry fully supported the trial court's factual and legal determinations that Mr. Hannie fulfilled his duty of care as he attempted to enter Kaliste Saloom Road and that Mr. Guidry is 100% at fault for the collision because he used the turn lane for passing. In particular, it is clear that the trial court relied primarily on Mr. Landry's testimony in determining fault, finding this disinterested witness's testimony credible. According to Mr. Landry, Mr. Hannie engaged in a "careful process" to make his left turn, and there was nothing more he could have done to avoid the collision. On the other hand, Mr. Landry saw Mr. Guidry exit the travel lane and enter the turn lane "in an erratic" manner from six or seven vehicles behind the vehicles that were stopped to allow Mr. Hannie to turn left, then accelerate quickly and proceed at "a rapid rate of speed," which he thought was "way too fast for the turning lane."

Moreover, Ms. Prossen's and Mr. Guidry's testimonies further support the trial court's fault assessment. Ms. Prossen's testimony shows that she believed traveling thirty-five miles an hour in the center turn lane was too fast. Additionally, Mr. Guidry admitted that he had to travel a distance of 697 feet from where he entered the turn lane before he could make a left turn, and Ms. Prossen's testimony that she could see Mr. Hannie's car at all times discredited his testimony that the vehicles that were stopped to allow Mr. Hannie to turn left were large and blocked his

11

view of Mr. Hannie's car. Hence, all the witnesses' testimonies demonstrate that Mr. Guidry did not act as a reasonable motorist under the circumstances, as he failed to keep a proper lookout and respond accordingly. *Allstate Ins. Co. v. Batiste*, 96-181 (La.App. 3 Cir. 6/12/96), 676 So.2d 747. *See also* La.R.S. 32:58 (providing that the failure to drive in a careful and prudent manner constitutes careless operation of a vehicle). For these reasons, the trial court's conclusion that Mr. Guidry was 100% at fault is not manifestly erroneous.

The defendants cite other cases in support of their claim that the trial court's assessment of fault is wrong. As shown below, we find that the cited cases are factually dissimilar and not applicable to this matter. *Cripps v. Kennedy*, 364 So.2d 243 (La.App. 3 Cir. 1978), *writ denied*, 366 So.2d 917 (La.1979), involved a rear-end collision that occurred when a vehicle exited a parking lot, made a right turn, and was struck by a vehicle exceeding the posted speed limit. This court refused to reverse the trial court's determination that contributory negligence on the part of the driver that exited the parking lot barred his recovery, noting that the primary duty of avoiding a collision rests with the driver of a vehicle entering a public highway from a secondary highway and that the driver of the other vehicle could not avoid the accident. Unlike *Cripps*, which applied rules that pre-dated comparative fault, the record herein shows Mr. Hannie, the driver exiting the parking lot, proceeded cautiously and Mr. Guidry could have avoided the accident by the exercise of reasonable care.

In *Miller v. Keal*, 29,564 (La.App. 2 Cir. 5/7/97), 694 So.2d 569, *writ denied*, 97-1751 (La. 10/13/97), 703 So.2d 620, the court determined that a motorist entering the roadway who relied on other motorists to signal that it was safe for her to enter

12

the center turn lane was 70% at fault for the collision between her vehicle and a vehicle traveling in the turn lane. That is not the case here: Mr. Landry testified that Mr. Hannie did everything he could to avoid a collision and that Mr. Guidry entered the turn lane and accelerated quickly just as Mr. Hannie proceeded into the turn lane. Furthermore, the evidence in *Miller* established that the center turn lane was "not clearly and properly marked," causing the trial court "some concerns to the benefit of [the defendant driver] as to whether or not he should have been in that portion of the middle lane or not." *Id.* at 572. Importantly, the trial court found that the "'fact that [the defendant driver] was traveling in the turn lane in and of itself did not cause the accident.'" *Id.* The trial court in the case now before us found otherwise under the facts presented. We do not find that determination erroneous.

Lastly, in *Kyle v. New Hampshire Insurance Co.,* an unpublished opinion bearing docket number 06-796 (La.App. 1 Cir. 2/9/07),[1] the trial court's assessment of 75% fault to a driver in Mr. Hannie's position was upheld on appeal although the driver in Mr. Guidry's position was using the center turn lane as a traveling lane. As the appellate court noted, the trial court specifically found the claim of the driver entering the roadway from a parking lot that the driver in the turn lane "just flew right into his vehicle" less plausible than the claim of the turning driver. Again, the facts present in *Kyle* differ from the facts herein, such that the holding therein does not affect our conclusion in this matter.

---

[1]Pursuant to La.Code Civ.P. art. 2168 unpublished opinions of "the courts of appeal shall be posted . . . and may be cited as authority . . . ."

***Damages***

Mr. Hannie answered the appeal, seeking an increase in general damages; he complains that the trial court's $9,000.00 general damage award is unreasonably low.

It is well settled that the assessment of damages is a fact determination "entitled to great deference on review." *Guillory v. Lee,* 09-75, p. 14 (La. 6/26/09), 16 So.3d 1104, 1116. Accordingly, when reviewing general damage awards, an appellate court's role is to review the trier of fact's exercise of discretion, not to decide what it considers an appropriate award. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059 (1994). If there is no clear abuse of discretion in the trier of fact's award, it must stand. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

Mr. Hannie testified that he suffered lacerations to his face, one of his hands, stiffness, soreness in his neck, clavicle area, and his back as a result of the collision. He was transported to the hospital and x-rayed to determine whether his clavicle had been fractured. X rays showed his clavicle was not fractured, and he was prescribed pain medication and released a few hours later. Mr. Hannie related that he began feeling pain in his neck almost immediately after the accident and that a day or so later he began suffering pain in his low back. He further testified that the pain and stiffness in his neck lasted for two to three weeks; the pain in his clavicle and chest area lasted a couple of months; and the pain in his back peaked approximately four months after the accident but continued to become symptomatic every few months at the time of the trial. He did not seek any medical treatment other than the treatment he received at the emergency room on the day of the accident.

In light of the limited treatment Mr. Hannie sought for his injuries, we cannot say the trial court abused its vast discretion in awarding $9,000.00 for general damages.

***Frivolous Appeal***

As provided in La.Code Civ.P. art. 2164, which allows an appellate court to award damages if an appeal is deemed frivolous, Mr. Hannie also answered this appeal, requesting damages and attorney fees for a frivolous appeal.

It is well settled that appeals are favored in Louisiana. *Blane Devillier Trucking, Inc. v. Authement*, 03-590 (La.App. 3 Cir. 11/5/03), 858 So.2d 795. Because La.Code Civ.P. art. 2164 is penal in nature, it must be strictly construed. *Ray v. Leatherman*, 96-542 (La.App. 3 Cir. 10/9/96), 688 So.2d 1133, *writ denied*, 96-2709 (La. 1/6/97), 685 So.2d 123 (citing *Hampton v. Greenfield*, 618 So.2d 859 (La.1993)). Pursuant to Article 2164, damages for frivolous appeal may be awarded when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that appellants' counsel does not seriously believe in the position he advocates. *Gallien v. Winn-Dixie*, 96-832 (La.App. 3 Cir. 12/11/96), 685 So.2d 531.

Although we find no merit in the arguments the defendants presented on appeal, it is clear that defense counsel seriously believes in the position he advocated on behalf of his clients herein. Accordingly, this is not a frivolous appeal, and we cannot award damages and attorney fees.

**DISPOSITION**

For these reasons, we find no error with the trial court's assessment of fault or award of general damages, and affirm the judgment of the trial court in all respects.

The plaintiff's request for damages and attorney fees is denied. Costs of this appeal are assessed to Ray Guidry and State Farm Mutual Automobile Insurance Company.

**AFFIRMED.**